UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERI SWEENEY, QUI TAM PLAINTIFF, for and on behalf of the United States of America,<br><br>Plaintiff,<br><br>v.<br><br>MANORCARE HEALTH SERVICES, INC., a Delaware corporation; STACEY MESAROS; "JOHN DOES(S)" 1 through 50; and "JOHN DOE, INC.(S)" 1 through 5,<br><br>Defendants. | Case No.  C03-5320RJB<br><br>ORDER |

This matter comes before the Court on the Motion of Defendants ManorCare Health Services, Inc. and Stacey Mesaros (collectively referred to as "ManorCare") to Dismiss with Prejudice Relator's Fraud-Based FCA Claims Asserted in her Second Amended Complaint (Dkt. 21), Sheri Sweeney's ("Sweeney") Motion to Amend the Complaint and Motion for Deferral pursuant to Federal Rule of Civil Procedure 12(d), (Dkt. 25). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

### I.   PROCEDURAL AND BASIC FACTS

#### A.   PROCEDURAL FACTS

Sweeney filed a complaint in this matter on June 9, 2003 asserting claims under the False Claims Act ("FCA"). Dkt. 1. As is required under the FCA, Sweeney served the United States, which declined to intervene. The Court ordered ManorCare be served and the Complaint unsealed on March 8, 2004. Dkt.

8. ManorCare was served on July 8, 2004. Dkt. 15, at 2. ManorCare filed a Motion to Dismiss the Complaint on July 26, 2004. Dkt. 12. On August 19, 2004, Sweeney filed her First Amended Complaint against ManorCare. Dkt. 14. ManorCare moved for dismissal of the First Amended Complaint on September 9, 2004 pursuant to Rules 12(b)(6) and 9(b). Dkt. 15. On October 21, 2004, this Court granted ManorCare's motion in part, denied it in part, and gave Sweeney leave to amend her complaint. Dkt. 18. Sweeney amended her Complaint on November 22, 2004. Dkt. 19. ManorCare and the newly joined Mesaros filed this motion arguing that (1) Sweeney has failed to plead her first fraud based causes of action under the FCA with particularity as is required by Rule 9(b); (2) her FCA "Quality of Care" theory has been rejected in a nursing home setting; (3) her FCA "Worthless Services" theory had been rejected in the nursing home setting; (4) her PPS Based Claim should be dismissed because nutritional services she criticizes have no bearing on the rate of Medicare or Medicaid reimbursement (5) her conspiracy claim should be dismissed as she fails to allege an agreement in her conspiracy theory under the FCA. Dkt. 21. Sweeney disputes that her Second Amended Complaint runs a foul of Rules 9(b) or 12, but if the Court is inclined to grant ManorCare's motion, moves the Court to either allow her to amend her complaint or to defer the decision of ManorCare's motion pursuant to Rule 12(d). Dkt. 25.

**B.    BASIC FACTS**

Sweeney worked for ManorCare at its nursing home facility in Gig Harbor, Washington, from February 2001 through January 13, 2003. Dkt. 19, at 3. Initially she was the Human Resource Manager, but during 2001 also became the Dietary Manager for the facility. *Id.*

Sweeney alleges that she noticed, soon after becoming the Dietary Manager, that certain dietary supplements and snacks, which were prescribed by physicians and clinical dieticians, were not served to the patients. *Id.* at 6. She estimated more than ninety-eight percent of the snacks and dietary supplements were not received by the intended patients during her time in the facility. *Id.* She alleges that the nutritional supplements would be allowed to "sit at the nursing stations not properly chilled or heated; ultimately to be either consumed at an inappropriate temperature or, much more commonly, not consumed at all or even distributed to the residents." *Id.* at 7. Sweeney also alleges that the staff at the Gig Harbor facility failed to monitor the residents' weight and deliberately entered false weights in patients charts. *Id.* Sweeney alleges that ManorCare did not monitor whether patients consumed the snacks or supplements.

*Id.* She alleges water was seldom, if ever, provided to residents at their bedsides. *Id.*

Sweeney estimated approximately eighty percent of the patients at the Gig Harbor facility are Medicare and/or Medicaid patients. *Id.* at 6. Sweeney believes that ManorCare included the cost of the snacks and dietary supplements in its bill to Medicare and Medicaid. *Id.* Sweeney asserts that the snacks and dietary supplements were erroneously and fraudulently included in ManorCare's bill because they were not provided to the patients. *Id.*

Sweeney alleges in her Amended Complaint that ManorCare and John Doe, Inc.(s) 1 through 5 and John Doe(s) 1 through 50 conspired together and engaged in fraudulent activity by submitting claims for nutritional and dietary services as part of its claimed Prospective Payment System rate. *Id.* at 8. She alleges it was known by these parties to be a false claim because these services were not provided. *Id.* She asserts ManorCare submitted claims which it knew to be false throughout the years 2001 and 2002. *Id.*

Sweeney also alleges that because the Gig Harbor facility engaged in billing for nutritional services it did not provide, other ManorCare facilities also engaged in a similar practice. *Id.* at 9. She alleges other ManorCare dieticians complained that their facilities also failed to provide patients with dietary supplements and adequate hydration. *Id.* at 9-10.

Sweeney alleges that she told ManorCare's on-site director, Stacey Mesaros, of the problems mentioned above. *Id.* at 11. Sweeney alleges that Mesaros retaliated by terminating her. *Id.* Sweeney alleges that Mesaros defamed and slandered her by telling ManorCare employees and the State of Washington Employment Security Department that Sweeney had falsified the temperature logs taken in the kitchen. *Id.* at 11-12.

**C.   CONDITIONS OF PARTICIPATION AND PAYMENT IN THE MEDICARE AND MEDICAID PROGRAM**

The Social Security Act requires skilled nursing facilities to adopt specified operating guidelines, conform to professional standards of care, and comply with all applicable federal and state regulations. *United States ex rel. Swan v. Covenant Care, Inc.,* 279 F.Supp.2d 1212, (E.D. Cal. 2002) (*citing* 42 U.S.C. § 1395i-3(d)(4)(A)). "The operation of skilled nursing facilities is governed by a comprehensive set of highly detailed and specific Medicare regulations." *Id.*; *See Generally* 42 C.F.R. Part 483. In order to participate in the Medicare and Medicaid program, a nursing facility must obtain certification which entails a determination that the facility is in substantial compliance with all laws and regulations governing the

quality of care. *See* 42 C.F.R. § 488.330(b)(1). The Secretary of Health and Human Services has a vast amount of discretion to sanction providers who violate conditions of participation. 42 U.S.C. § 1395i-3(h)(2)(A). Sanctions include denial of payment, fines, and appointment of temporary management. 42 U.S.C. § 1395i-3(h)(2)(B). A skilled nursing facility can still bill Medicare and Medicaid for up to six months after being found to be noncompliant. 42 U.S.C. § 1395i-3(h)(2)©). The parties in this case agree that skilled nursing facilities, who met the conditions of participation, are compensated by the government pursuant to the Prospective Payment System ("PPS"). Each skilled nursing facility's PPS rate is determined by a number of factors including, but not limited to, regional wage rates and resident needs assessments. 42 C.F.R. 413.337. Skilled nursing facilities do not bill for each individual service they perform for their residents. *See Id.*

## II.  DISCUSSION

### A.  STANDARD FOR MOTION TO DISMISS

A court may dismiss a claim if it appears beyond doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983), *citing Conley v. Gibson*, 355 U.S. 41, 45-56 (1957). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). However, a plaintiff must plead factual allegations with specificity; vague and conclusory allegations of fact fail to state a claim for relief. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988). As will be explained below, a higher standard is required in cases of fraud. If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d at 1300. If the claim is not based on a proper legal theory, the claim should be dismissed. *Id.*

### B.  FAILURE TO PROPERLY PLEAD FRAUD PURSUANT TO RULE 9(b)

"Complaints brought under the FCA must fulfill the requirements of Rule 9(b)." *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) provides, "[i]n all averments of fraud or mistake, the

> circumstances constituting fraud or mistake shall be stated with particularity."
>
> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Bly-Magee,* at 1018 (internal quotations omitted). In *Lee* the plaintiff alleged that his employer, SmithKline, mishandled the control samples in laboratory tests but still billed the government for the tests. 245 F.3d at 1050. The Court held that Lee's allegation that the defendant, "knowingly . . . changed control numbers [on various tests] to wrongfully represent that the laboratory results fell within an acceptable standard of error" did not have adequate factual support. *Id.* at 1051. The Court noted that Lee did not "specify the types of tests implicated in the alleged fraud, identify the SmithKline employees who performed the tests, or provide any dates, times, or places the tests were conducted." *Id.*

Unlike the plaintiff's claim in *Lee*, Sweeney's allegations regarding ManorCare's practices while she was on staff are sufficient to satisfy Rule 9(b)'s requirements. ManorCare's Motion to dismiss pursuant to Rule 9(b) should be denied.

**C.     FAILURE TO STATE A CLAIM UNDER THE FCA**

Under the FCA, liability attaches to any person who,

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a). "A person 'knowingly' submits a false claim not only when he or she 'has actual knowledge of the information,' but also when he or she 'acts in deliberate ignorance' or 'reckless disregard' of the truth or falsity of the information." *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001)(*citing* 31 U.S.C. § 3729(b)). Sweeney alleges ManorCare violated the FCA by providing a poor quality of care, billing for worthless services, and conspiring to violate the FCA.

ORDER
Page - 5

Dkt. 19. ManorCare argues Sweeney's three theories of liability under the FCA fail to state a claim upon which relief can be granted. Dkt. 21.

### 1.      **Quality of Care**

In her quality of care claim under the FCA Sweeney alleges that ManorCare's failure "to adhere to the Washington State and Federal regulations concerning the quality of care to be provided to nursing home residents was so egregious and such a fundamental failure as to constitute a failure of consideration . . . ." Dkt. 19, at 12. However, "[v]iolations of laws, rules or regulations alone do not create a cause of action under the FCA. It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996); *Swan* at 1220-1221.

In *Hopper*, a special education teacher sued her school district under the FCA. *Hopper*, at 1263-1264. Her complaint alleged the school district accepted federal funding for special education, but did not observe all the relevant laws and regulations. *Id.* at 1264. The *Hopper* Court noted that the federal government does not require funding recipients to certify their compliance with federal laws and regulations. *Id.* at 1267. The *Hopper* Court rejected her claim remarking, that "[m]ere regulatory violations do not give rise to a viable FCA action." *Id.*

A California Federal District Court also considered a case similar to the case at bar. In *Swan* the plaintiff sought to impose FCA liability on a nursing home based on violations of various laws and regulations, billing for worthless services, and false certification. *Swan* at 1220-1222. The Court there rejected the plaintiff's theory of liability (violation of laws and regulations) because the FCA only attaches liability to false claims for payment, not to underlying activity that allegedly violates federal law. *Id.* at 1220-1221.

Although not binding authority, this Court finds the *Swan* Court's rationale and conclusion

instructive. Here, as in *Swan*, Sweeney's first claim, that because ManorCare's quality of care is so poor it is violating the FCA, fails to state a claim upon which relief can be granted. Sweeney's claim in essence is based on alleged regulatory violations. However, "[m]ere regulatory violations do not give rise to a viable FCA action." *Hopper* at 1267. This is particularly true here, as in *Hopper*, where full regulatory compliance is not a requirement for receipt of federal funding. *See Id.* Sweeney does not allege that the regulatory violations were conditions of payment. The regulation violations Sweeney points to are conditions of participation in the Medicare and Medicaid programs. Moreover, "[t]here are administrative and other remedies for regulatory violations." *Id.* Absent actionable false certifications upon which funding is conditioned, the FCA does not provide a remedy for regulatory violations. *Id.* Sweeney's claim for an FCA violation based on the quality of care ManorCare gives its residents should be dismissed.

### 2. Worthless Services

"In an appropriate case, knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under 3729, regardless of any false certification conduct." *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001). "Neither false certification nor a showing of government reliance on false certification for payment need be proven if the fraud claim asserts fraud in the provision of goods and services." *Id.*

While acknowledging the recognition of the worthless services theory of liability under the FCA, the *Swan* Court rejected this theory in a nursing home setting. *Id.* at 1221. Again, this Court finds the *Swan* Court's rationale and conclusion persuasive. It noted that the nursing home did not bill the government separately for individual acts of patient care such as feeding, turning, or bathing. *Id.* Instead, the government paid the nursing home a per diem rate for providing room and board, including the provision of such routine services for each patient. *Id.* The *Swan* Court further noted that Swan was challenging the level of care provided, not whether care was provided at all. *Id.* As a result, the Court

there held that plaintiff's FCA claim did not fit within the worthless services category. *Id.* The *Swan* Court also rejected plaintiff's FCA claims under a false claim theory. *Id.* The Court noted "the prevailing law is that regulatory violations do not give rise to a viable FCA action unless government payment is expressly conditioned on a false certification of regulatory compliance." *Id.* The Court there remarked that the Secretary of Health and Human Services has several regulatory options in dealing with nursing homes who are not found to be in substantial compliance. *Id.* at 1222. The *Swan* Court noted,

> To allow FCA suits to proceed where government payment of Medicare claims is not conditioned on perfect regulatory compliance--and where HHS may choose to waive administrative remedies, or impose a less drastic sanction than full denial of payment--would improperly permit qui tam plaintiffs to supplant the regulatory discretion granted to HHS under the Social Security Act, essentially turning a discretionary denial of payment remedy into a mandatory penalty for failure to meet Medicare requirements.

*Id.* at 1222.

In her second claim, Sweeney's Complaint alleges that the "nutritional supplements and snacks, to which the federal government [was] charged were, essentially, 'worthless services' as they were not usually provided to intended recipients" and that "[f]alse statements were made to the State and Federal Governments about the provision of these necessary dietary and nutritional products." Dkt. 19, at 13. Sweeney further alleges that ManorCare "fraudulently inflated their historical cost basis, by claiming as costs services never provided" and so "received a higher PPS rate for each patient then it would have otherwise have received." *Id.*

Sweeney's worthless services theory fails to state a claim. Parties agree that nutritional services are not separately billed services, but are a part of the overall PPS rate. As in *Swan*, Sweeney does not allege that Manor Care failed to provide any services at all. She challenges the level of care that they received regarding nutritional supplements and snacks. The Court agrees with the *Swan* Court's implicit finding and ManorCare assertion, that it would be impossible to determine whether particular services ManorCare provided, and the United States paid for, were worthless without finding that the care as a whole was

worthless. Moreover, Congress has chosen to give extensive authority to the Secretary of Health and Human Services in order to deal with skilled nursing facilities that are failing to comply with certain regulations regarding patient care.

Sweeney's allegation that ManorCare is falsely certifying compliance with applicable regulations by submitting bills for payment is unpersuasive. As explained above, substantial compliance with applicable laws and regulations is a condition of participation in the program, not a condition of payment.

Sweeney's allegation that ManorCare is inflating their PPS rate by including bills for snacks is unpersuasive. Sweeney fails to point to any legal authority for the proposition that snacks are part of the PPS rate. While Sweeney argues that whether the snacks are being separately billed is an issue of fact, ManorCare cites authority showing that snacks and supplements are <u>not</u> included in the PPS rate. Dkt. 21, at 14-15. Sweeney's second claim should be dismissed for failure to state a claim.

### 3. Conspiracy to Violate FCA

Although the Ninth Circuit has not ruled on what a plaintiff must allege to plead a conspiracy to violate the FCA, in *United States v. St. Luke's Subacute Hospital and Nursing Centre, Inc.*, 2004 WL 2905237 (N.D. CA. Dec. 16, 2004) the Court noted that other courts have held that to "establish a claim for civil conspiracy under the FCA, the [plaintiff] need only prove (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) that one or more conspirators performed an act to effect the object of the conspiracy."

ManorCare argues that the Complaint fails to allege any agreement and that ManorCare cannot conspire with Mesaros due to their status of employer and employee. Dkt. 21, at 16. Construing her Complaint liberally, Sweeney does allege a conspiracy. Dkt. 19, at 13. However, she does not respond to ManorCare's legal argument that a corporation can not conspire with itself. Sweeney does not indicate that she believes anyone outside ManorCare was involved in billing. She does argue that she needs more

time for discovery to identify the John and Jane Does she alleges are involved in the conspiracy, but does not, in any way, indicate that they might be acting outside the scope of their employment at ManorCare. Dkt. 25, at 16. Sweeney's third cause of action should be dismissed.

### D. AMENDMENT OF THE COMPLAINT

While it is doubtful that further amendment will salvage plaintiff's FCA claims, if she wishes to further amend she should request permission through a separate motion pursuant to Rule 15(a).

### III. ORDER

Therefore, it is hereby **ORDERED** that: ManorCare's Motion to Dismiss is **GRANTED** as to its Rule 12(b)(6) Motion regarding plaintiff's first three causes of action. Sweeney's first three causes of action (¶¶ XXI through XXVI) are **DISMISSED WITH PREJUDICE**. Furthermore, Sweeney's request for an opportunity to further amend is **DENIED WITHOUT PREJUDICE** and her request for delay is **DENIED** for insufficient showing.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 4th day of March, 2005.

/S/ Robert J. Bryan
ROBERT J. BRYAN
United States District Judge