UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERI SWEENEY, QUI TAM PLAINTIFF, for and on behalf of the United States of America,<br><br>Plaintiff,<br><br>v.<br><br>MANORCARE HEALTH SERVICES, INC., a Delaware corporation; STACEY MESAROS; "JOHN DOES(S)" 1 through 50; and "JOHN DOE, INC.(S)" 1 through 5,<br><br>Defendants. | Case No. C03-5320RJB<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion to Amend Complaint, to Compel Further Discovery on Issue of Medicare /Medicaid Reimbursement and to Continue Discovery Deadlines (Dkt. 69), and Qui Tam Plaintiff's Motion to Amend Second Amended Complaint (Dkt. 94) and Qui Tam Plaintiff's Amended and Renoted Motion to Amend Second Amended Complaint (Dkt. 102). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

### I.  PROCEDURAL AND BASIC FACTS

#### A.  PROCEDURAL FACTS

Sweeney filed a complaint in this matter on June 9, 2003 asserting claims under the False Claims Act ("FCA"). Dkt. 1. As is required under the FCA, Sweeney served the United States, which declined

ORDER - 1

to intervene. The Court ordered ManorCare be served and the Complaint unsealed on March 8, 2004. Dkt. 8. ManorCare was served on July 8, 2004. Dkt. 15, at 2.

ManorCare filed a Motion to Dismiss the Complaint on July 26, 2004. Dkt. 12. On August 19, 2004, Sweeney filed her First Amended Complaint against ManorCare. Dkt. 14. ManorCare moved for dismissal of the First Amended Complaint on September 9, 2004 pursuant to Rules 12(b)(6) and 9(b). Dkt. 15. On October 21, 2004, this Court granted ManorCare's motion in part, denied it in part, and gave Sweeney leave to amend her complaint. Dkt. 18. Sweeney amended her Complaint on November 22, 2004. Dkt. 19. In her Second Amended Complaint, Sweeney's first FCA claim was based on a "Quality of Care Theory," her second FCA claim was based on a theory of "Worthless Services" and her third FCA claim was a conspiracy claim. *Id.* ManorCare and the newly joined Stacey Mesaros (collectively referred to as "ManorCare") then moved to dismiss these causes of action pursuant to Rule 12(b)(6) arguing that her FCA "Quality of Care" and "Worthless Services" theories have been rejected in a nursing home setting, and her FCA conspiracy claim should be dismissed as she failed to allege any agreement. Dkt. 21. On March 4, 2005, Sweeney's FCA "Quality of Care," "Worthless Services," and conspiracy claims were dismissed with prejudice. Dkt. 28. Sweeney's motion to amend was denied without prejudice. *Id.*

On January 6, 2006, Sweeney filed Plaintiff's Motion to Amend Complaint, to Compel Further Discovery on Issue of Medicare/Medicaid Reimbursement, and to Continue Discovery Deadlines. Dkt. 69-1. In this Motion, Sweeney moves to amend her Second Amended Complaint for the fourth time arguing she should be allowed to proceed on her FCA "Quality of Care" and "Worthless Services" theories. *Id.* Sweeney did not file a proposed Third Amended Complaint. The matter was noted for the Court's consideration on February 3, 2006. Dkt. 73. After ManorCare responded to Sweeney's Motion and the United States government filed a brief, Sweeney filed an additional brief in support of her Motion and attached a proposed Third Amended Complaint. Dkts. 93-1 and 94-2. On February 8, 2006, Sweeney filed Qui Tam Plaintiff's Amended and Renoted Motion to Amend Second Amended Complaint, and noted this Motion for consideration on February 17, 2006. Dkt. 102-1. Sweeney also

ORDER - 2

filed a proposed Third Amended Complaint on February 8, 2006, which differed from the Third Amended Complaint filed on February 2, 2006. Dkt. 102-2. She notified the Court that she intended the proposed Third Amended Complaint filed on February 8, 2006 as the version to be considered for amendment. Dkt. 106. This matter is set to begin trial on May 22, 2006. Dkt. 79.

### B.   BASIC FACTS

Sweeney worked for ManorCare at its nursing home facility in Gig Harbor, Washington, from February 2001 through January 13, 2003. Dkt. 19, at 3. Initially she was the Human Resource Manager, but during 2001 also became the Dietary Manager for the facility. *Id.*

Sweeney alleges that she noticed, soon after becoming the Dietary Manager, that certain dietary supplements and snacks, which were prescribed by physicians and clinical dieticians, were not served to the patients. *Id.* at 6. She estimated more than ninety-eight percent of the snacks and dietary supplements were not received by the intended patients during her time in the facility. *Id.* She alleges that the nutritional supplements would be allowed to "sit at the nursing stations not properly chilled or heated; ultimately to be either consumed at an inappropriate temperature or, much more commonly, not consumed at all or even distributed to the residents." *Id.* at 7. Sweeney also alleges that the staff at the Gig Harbor facility failed to monitor the residents' weight and deliberately entered false weights in patients charts. *Id.* Sweeney alleges that ManorCare did not monitor whether patients consumed the snacks or supplements. *Id.* She alleges water was seldom, if ever, provided to residents at their bedsides. *Id.*

Sweeney estimated approximately eighty percent of the patients at the Gig Harbor facility are Medicare and/or Medicaid patients. *Id.* at 6. Sweeney believes that ManorCare included the cost of the snacks and dietary supplements in its bill to Medicare and Medicaid. *Id.* Sweeney asserts that the snacks and dietary supplements were erroneously and fraudulently included in ManorCare's bill because they were not provided to the patients. *Id.*

Sweeney alleges in her Second Amended Complaint that ManorCare and John Doe, Inc.(s) 1 through 5 and John Doe(s) 1 through 50 conspired together and engaged in fraudulent activity by

ORDER - 3

submitting claims for nutritional and dietary services as part of its claimed Prospective Payment System rate. *Id.* at 8. She alleges it was known by these parties to be a false claim because these services were not provided. *Id.* She asserts ManorCare submitted claims which it knew to be false throughout the years 2001 and 2002. *Id.*

Sweeney also alleges that because the Gig Harbor facility engaged in billing for nutritional services it did not provide, other ManorCare facilities also engaged in a similar practice. *Id.* at 9. She alleges other ManorCare dieticians complained that their facilities also failed to provide patients with dietary supplements and adequate hydration. *Id.* at 9-10.

Sweeney alleges that she told ManorCare's on-site director, Stacey Mesaros, of the problems mentioned above. *Id.* at 11. Sweeney alleges that Mesaros retaliated by terminating her. *Id.* Sweeney alleges that Mesaros defamed and slandered her by telling ManorCare employees and the State of Washington Employment Security Department that Sweeney had falsified the temperature logs taken in the kitchen. *Id.* at 11-12.

### C. CONDITIONS OF PARTICIPATION AND PAYMENT IN THE MEDICARE AND MEDICAID PROGRAM

The Social Security Act requires skilled nursing facilities to adopt specified operating guidelines, conform to professional standards of care, and comply with all applicable federal and state regulations. *United States ex rel. Swan v. Covenant Care, Inc.,* 279 F.Supp.2d 1212, (E.D. Cal. 2002) (*citing* 42 U.S.C. § 1395i-3(d)(4)(A)). "The operation of skilled nursing facilities is governed by a comprehensive set of highly detailed and specific Medicare regulations." *Id.*; *See Generally* 42 C.F.R. Part 483. In order to participate in the Medicare and Medicaid program, a nursing facility must obtain certification which entails a determination that the facility is in substantial compliance with all laws and regulations governing the quality of care. *See* 42 C.F.R. § 488.330(b)(1). The Secretary of Health and Human Services has a vast amount of discretion to sanction providers who violate conditions of participation. 42 U.S.C. § 1395i-3(h)(2)(A). Sanctions include denial of payment, fines, and appointment of temporary management. 42 U.S.C. § 1395i-3(h)(2)(B). The Secretary of Health and Human Services has discretion to continue to pay a skilled nursing facility for up to six months after the facility has been

ORDER - 4

found to be noncompliant. 42 U.S.C. § 1395i-3(h)(2)(C). The parties in this case agree that skilled nursing facilities, who met the conditions of participation, are compensated by the government pursuant to the Prospective Payment System ("PPS"). Each skilled nursing facility's PPS rate is determined by a number of factors including, but not limited to, regional wage rates and resident needs assessments. 42 C.F.R. 413.337. Skilled nursing facilities do not bill for each individual service they perform for their residents. *See Id.*

## II. DISCUSSION

### A. STANDARD ON MOTION FOR LEAVE TO AMEND

Fed. R. Civ. P. 15(a) permits a party to amend it's pleading "only by leave of the court, or by written consent of the adverse party." Leave is freely given when justice so requires. *Id.* Denial may be justified by undue delay, bad faith, futility, and prejudice to the opposing party. *Texaco, Inc. v. Ponsoldt*, 939 F2.d 794 (9th Cir. 1991).

### B. AMENDMENT TO ADD FCA CLAIMS

Under the FCA, liability attaches to any person who,

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a). "A person 'knowingly' submits a false claim not only when he or she 'has actual knowledge of the information,' but also when he or she 'acts in deliberate ignorance' or 'reckless disregard' of the truth or falsity of the information." *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001)(*citing* 31 U.S.C. § 3729(b)). In her Second Amended Complaint, Sweeney alleged ManorCare violated the FCA by providing a poor quality of care, billing for worthless services, and conspiring to violate the FCA. Dkt. 19. On March 4, 2005, each of these claims were dismissed because they failed to state a claim upon which relief can be granted. Dkt. 28.

ORDER - 5

### 1. Quality of Care

"Violations of laws, rules or regulations alone do not create a cause of action under the FCA. It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996); *United States ex rel. Swan v. Covenant Care Inc.,* 279 F. Supp.2d 1212 (E.D. Cal. 2002)(rejecting the plaintiff's theory of a nursing home's liability based on violations of laws and regulations because the FCA only attaches liability to false claims for payment, not to underlying activity that allegedly violates federal law). In her quality of care theory of recovery under the FCA, Sweeney alleged in her Second Amended Complaint that ManorCare's failure "to adhere to the Washington State and Federal regulations concerning the quality of care to be provided to nursing home residents was so egregious and such a fundamental failure as to constitute a failure of consideration . . . ." Dkt. 19, at 12. Sweeney's quality of care claim was dismissed because she failed to point to any law, rule, or regulation, upon which payment was a condition and that ManorCare allegedly violated. Dkt. 28. In dismissing Sweeney's quality of care claim, this Court found the *Swan* Court's rationale and conclusions instructive under the facts of this case. *Id*.

In attempt to rectify her pleading deficiency, Sweeney points to language from a federal form which is used to assess a nursing home patient's needs. Dkt. 102-2, at 7. The form is referred to as the Minimum Data Set ("MDS") and is filled out by an Assessment Coordinator. *Id.* Specifically, she notes the portion of the MDS form which provides:

> I certify that the accompanying information accurately reflects resident assessment or tracking information for this resident and that I collected or coordinated collection of this information on the dates specified. To the best of my knowledge, this information was collected in accordance with applicable Medicare and Medicaid requirements. I understand that this information is used as a basis for ensuring that residents receive appropriate and quality care and as basis for payment from federal funds. I further understand that payment of such federal funds and continued participation in the government-funded health care programs is conditioned on the accuracy and truthfulness of this information, and that I may be personally subject to or may subject my organization to substantial criminal, civil, and/or administrative penalties for submitting false information. I also certify that I am authorized to submit this information by this facility on its behalf.

ORDER - 6

*Id.* at 7-8. She then notes that there is a portion of the form which includes reference to "dietary supplementation" between meals. *Id.*

Sweeney's Motions to amend her Second Amended Complaint to again add a quality of care claim should be denied. She still fails to allege that any of the statutes or regulations allegedly violated by ManorCare were conditions of payment. Contrary to her apparent assertions, the MSD form language does not cure her pleading deficiency. Sweeney's position in regard to the MSD form language misses the core of her pleading problem: the government has purchased a bundle of services from ManorCare - that of skilled nursing care. Sweeney's allegations deal with only a small portion of those services. Moreover, Sweeney's argument ignores the rules and regulations which allow a skilled nursing home's substantial compliance with all the multitude of rules regulations which govern patient care. *See* 42 C.F.R. § 488.330(b)(1). Sweeney has failed to allege the key factual predicate for her claim. She should not be able to amend her Second Amended Complaint to re-add the quality of care FCA claim based on her submitted proposed Third Amended Complaint.

### 2. Worthless Services

"In an appropriate case, knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under 3729, regardless of any false certification conduct." *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001). "Neither false certification nor a showing of government reliance on false certification for payment need be proven if the fraud claim asserts fraud in the provision of goods and services." *Id.* This Court dismissed Sweeney's worthless services theory of recovery under the FCA, relying, in part, on the rationale in *Swan*. Dkt. 28. In essence, this claim challenged the level of care patients received, which, under the facts of this case, is inadequate to state a claim under the FCA as fully explained in this Court's March 4, 2005 Order. *Id.*

Sweeney now attempts to plead that ManorCare's failure to provide dietary supplements and nutritional snacks, as well as adequate in-room hydration "was so egregious and inadequate that the 'bundle of services' provided the United States was 'worthless' or substantially 'worthless' or at least

ORDER - 7

that a "portion of the 'bundle of services'" was "completely worthless to the government." Dkt. 102-2 at 14.

Sweeney's Motions to amend her Second Amended Complaint to again add a worthless services claim should be denied. She has not alleged facts sufficient to show that ManorCare's alleged failures rendered the entire bundle of services the government purchased was worthless. The same reasoning and law that applied in the prior order dismissing this claim still applies, and shall not be repeated here. Dkt. 28. Sweeney further urges the creation "of a new rule of law to address the unique circumstances of FCA suits against skilled nursing providers." Dkt. 102-1 at 2. This the Court declines to do, particularly in light of the extensive regulatory authority Congress has seen fit to grant the Secretary of Health and Human Services to monitor care given in skilled nursing facilities.

Sweeney's allegation that ManorCare is inflating their PPS rate by including bills for snacks is unpersuasive. Sweeney again fails to point to any legal authority for the proposition that snacks are part of the PPS rate. While Sweeney argues that whether the snacks are being separately billed is an issue of fact, ManorCare provides undisputed evidence that snacks and supplements are <u>not</u> included in the PPS rate. Dkt. 108. Sweeney also contends that prior to the adoption of the PPS system in 1998, ManorCare was billing for snacks and dietary supplements that were not typically provided to the patients. Dkt. 102-2, at 4 and 14. However, she has not alleged a sufficient factual predicate to support this allegation. Her motions to amend her Second Amended Complaint to add a worthless services claim should be denied as futile.

**3.     Conspiracy to Violate FCA**

Although the Ninth Circuit has not ruled on what a plaintiff must allege to plead a conspiracy to violate the FCA, in *United States v. St. Luke's Subacute Hospital and Nursing Centre, Inc.*, 2004 WL 2905237 (N.D. CA. Dec. 16, 2004) the Court noted that other courts have held that to "establish a claim for civil conspiracy under the FCA, the [plaintiff] need only prove (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) that one or more conspirators performed an act to effect the object of the conspiracy."

ORDER - 8

Sweeney's Third Amended Complaint also adds language to her conspiracy claim. Dkt. 102-2 at 15. However, she fails to address the prior issues raised in this Court's prior order dismissing this claim. Dkt. 28. As a consequence, Sweeney's motion amend her Second Amended Complaint to re-add her conspiracy claim should be denied as futile.

### 4. Conclusion on Motions to Amend the Complaint to include FCA claims

Upon consideration, particularly in light of the concerns raised in the U.S. government's brief, the Court takes no position on the viability of "quality of care" or "worthless services" as theories of recovery under the FCA in a nursing home setting under different facts. Clearly, each case should be decided on a case to case basis. However, under the facts in this case, Sweeney's proposed language in her Third Amended Complaint would render amendment futile because she would again fail to state claims upon which relief could be granted. Sweeney's Motions to amend her Second Amended Complaint should be dismissed as futile.

### C. AMENDMENT TO SLANDER AND DEFAMATION CLAIM

Sweeney's proposed Third Amended Complaint also adds language under her slander and defamation claims. Dkt. 102-2, at 16. Sweeney did not provide any rationale for the addition of this language. Sweeney's motion to amend her Second Amended Complaint's language regarding her slander and defamation claims should be denied.

### D. RELATED MOTIONS

Sweeney further seeks relief from the Court's September 23, 2005 order quashing outstanding discovery requests related to her fraud based claims. Dkt. 69-1. As her motions to amend her Second Amended Complaint to reincorporate her fraud based claims should be denied, her motion regarding discovery on these issues should also be denied.

Sweeney also moves the Court to continue the discovery cutoff date and to continue the time for filing motions related to discovery to February 28, 2006. *Id.* On January 13, 2006, parties filed a stipulation moving the deadline for expert depositions to February 28, 2006. Dkt. 77. Plaintiff provides

ORDER - 9

1 no basis for the continuance other than pursuit of the fraud based claims. In light of the above holding
2 and the January 13, 2006 stipulation, her motion to continue discovery deadlines should be denied.

### III.  ORDER

Therefore, it is hereby **ORDERED** that: Plaintiff's Motion to Amend Complaint, to Compel Further Discovery on Issue of Medicare /Medicaid Reimbursement and to Continue Discovery Deadlines (Dkt. 69) is **DENIED**, and Qui Tam Plaintiff's Motion to Amend Second Amended Complaint (Dkt. 94) is **DENIED** and Qui Tam Plaintiff's Amended and Renoted Motion to Amend Second Amended Complaint (Dkt. 102) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 27th day of February, 2006.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge